001-029-00

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FILED BY _e_ D.C.

05 JUN 30  PM 3: 35

...H R. DI TROLIO
...K OF U.S. DIST. CT
...D OF TN-JACKSON

| | | |
|---|---|---|
| TAWANNA CURRIE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1-03-1052 T-An |
| | ) | |
| HAYWOOD COUNTY, TENNESSEE; | ) | |
| and TIMOTHY LEON ROGERS, | ) | |
| individually and as an employee, | ) | |
| officer and agent of Haywood County, | ) | |
| Tennessee | ) | |
| | ) | |
| Defendants. | ) | |

---

### JOINT PRE-TRIAL ORDER
### OF DEFENDANT HAYWOOD COUNTY, TENNESSEE
### AND PLAINTIFF TAWANNA CURRIE

---

Defendant Haywood County, Tennessee and Plaintiff Tawanna Currie submit the following as their Proposed Pre-Trial Order in this cause and submits to this Honorable Court that they have not received comments or contentions from defendant Rogers. Therefore, it has become necessary for Defendant Haywood County, Tennessee and Plaintiff Tawanna Currie to submit the following proposed pre-trial order.

## I.  JURISDICTIONAL QUESTIONS

There are no jurisdictional questions or issues that are pending at this time.

## II.  PENDING MOTIONS

There are currently no pending motions.  However, Defendant Haywood County, Tennessee would also show this Court that Defendant Timothy Rogers, proceeding in this matter

1

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on ___7|1|05___

84

*pro se*, has failed to submit Rule 26(a)(3) Disclosures, which pursuant to the Rule 16(b) Scheduling Order entered in this matter, were due on February 22, 2005.  Defendant Haywood County, Tennessee hereby reiterates that it intends to object to the introduction of any witness and/or exhibit introduced by Defendant Timothy Rogers.

## III.  PROCEDURAL BACKGROUND

On February 26, 2003, Plaintiff filed this action under 42 USC § 1983 in the United States District Court for the Western District of Tennessee, Eastern Division, against Haywood County, Tennessee, an entity known as the Haywood County Sheriff's Department, and Timothy Rogers, in his individual capacity and as an employee, officer and agent of Haywood County, Tennessee.   On September 2, 2003, an Order was entered granting Defendant's Motion to Dismiss Certain Defendants and Certain Claims.  At that time, this Honorable Court dismissed an entity known as Haywood County Sheriff's Department; dismissed Plaintiff's punitive damages claim against Haywood County, Tennessee; and, declined to exercise supplemental jurisdiction over Plaintiff's state law claims.  On March 10, 2005, this Honorable Court entered an Order Partially Granting and Partially Denying Defendant Haywood County, Tennessee's Motion for Summary Judgment.   This Honorable Court held that the Defendant was not deliberately indifferent in retaining Timothy Rogers as an employee and that Defendant was not liable to plaintiff for defendant's actions under *respondeat superior*.   Defendant Haywood County, Tennessee denies that it has violated any constitutional or any other legal rights of the Plaintiff.

## IV.  CONTENTIONS OF THE PARTIES

The contentions included below are simply the contentions and/or positions of the respective parties only.  By executing this document, neither party is stipulating to the contentions made

2

herein by the opposing party and would state that any positions or contentions contained therein are not evidence.

## A. <u>CONTENTIONS OF THE PLAINTIFF TAWANNA CURRIE</u>

It is the contention of the plaintiff that the proof will show in February, 2002, Tawanna Currie was a resident of 109 Summit Lane, Stanton, Tennessee. Ms. Currie's mom came in and asked her to call 911 on her cell phone because her brother had taken pills and wanted to die. Ms. Currie called 911. Deputy Tim Rogers was the first person to show at the scene. The ambulance arrived and stabilized her brother. They loaded him up and headed out the door with her brother. Deputy Rogers turned around and asked Ms. Currie if she wanted him to come back and let her know what was going on and where her brother was going to be, she told him yes. At all times, Deputy Rogers was acting in the course and scope of his employment as a deputy sheriff for Haywood County.

Deputy Rogers returned to her house after a period of time. She allowed Deputy Rogers to come in after hearing his knock. Deputy Rogers came in and told her that her brother was going to the hospital in Brownsville. At that time, Deputy Rogers came over to where she was and tried to kiss her. He began rubbing on her legs and on her butt. Also, he rubbed her breast and continued to try and kiss her and had her pinned between him and the washer. She requested that he stop and leave. Deputy Rogers told her that he would not leave unless she kissed him.

She again told him no and Deputy Rogers continued assaulting her. He was rubbing her shoulders, rubbing his privates on the back of her butt, and asking her if it felt good. Finally, Deputy Rogers told her that he would take a hug instead of a kiss and leave. Ms. Currie went to hug him and he grabbed her and pulled her off her feet up against him. He had her butt cupped

3

up to him, and Ms. Currie began to cry, realizing that she was powerless to the strength of Deputy Rogers.

In fact Ms. Currie testified "I was scared. He had a gun on his hip. I was terrified. I did everything I could to even-- I asked him where he was from, because everywhere I move he was right there. I couldn't -- I couldn't get away. So I asked him where he was from trying to throw him off." After Deputy Rogers left, Ms. Currie locked her door and went into her bedroom and locked the door and cried. Ms. Currie testified that she did not call the police because she did not know whether Deputy Rogers would be dispatched again and come back to her house.

Plaintiff contends that defendant, Haywood County, is liable for inadequate training and insufficient policies and procedures, in violation of Section 1983. Additionally, the lack of sufficient training and adequate policies and procedures represent deliberate indifference to the rights of Ms. Currie. Sheriff Raymond Russell was the sheriff at the time of the incident that gave rise to this lawsuit. Sheriff Russell was the sheriff of Haywood County from 1986 until 2002. Sheriff Russell admits that he was responsible to insure that his deputies received proper training. Sheriff Russell indicated that his deputies were supposed to do 40 hours of in service training however, he was unsure of what they would go over at the training. In 2002 before he left as sheriff, Sheriff Russell admits that they did not have any in house seminars. Sheriff Russell does not remember what was covered in the in house seminars that were performed. Sheriff Russell states that policies and procedures were implemented and adopted when he became sheriff. Prior to that time, there were no policies and regulations governing Haywood County Sheriff's Department. Sheriff Russell admitted after having an opportunity to look at the policies and regulations of Haywood County Sheriff's Department that there was no policy regarding the response to emergency calls. Sheriff Russell admits that when the officer went to

4

in service training, that they would not go over Haywood County's policies and procedures. Again, Sheriff Russell admitted in his deposition that he would not attend nor was he aware of what would be covered in Haywood County's in house training sessions. Sheriff Russell admitted that he did not recall whether or not Deputy Rogers had been given a copy of the policies and regulations of the Haywood County Sheriff Department. Sheriff Russell admitted in his deposition that he doesn't know whether or not if his deputies were ever trained regarding sexual harassment. Finally, Sheriff Russell admitted that it was not in their training as to how officers should perform when responding to calls dealing with members of the opposite sex.

Melvin Bond's current position is Sheriff of Haywood County. He has served in that position since September 2002. Sheriff Bond was a Deputy Sheriff prior to that time. Sheriff Bond is familiar with the policies and procedures of the Haywood County Sheriff's Department. Sheriff Bond has changed one policy and procedure since he has been in the office, and that's basically to secure the facility of the incarceration, meaning the jail facility. Sheriff Bond testified that he reviews these policies as different situations arise. When asked specifically if Haywood County had a policy that dealt with *Emergency Calls*, Sheriff Bond stated "No, there's not a policy in here." When questioned about the training that he received to handle emergency call for the Haywood County Sheriff's Department, Sheriff Bond stated that "he received training at the academy when he began his duties as deputy." Since that time, each year he performs a 40 hour in-service training. In the 40 hour in-service training, there is only one standard class and that is child sex abuse. Outside of that, the subjects vary as to what the training involves.

Prior to Sheriff Bond becoming the sheriff, Sheriff Russell periodically gave sessions where they went over policies and procedures of Haywood County. Sheriff Bond says that there

5

was never any documentation of any Haywood County training dealing with policies and procedures. The practice of Haywood County was simply to give the policy and procedures to hired personnel and ask if they reviewed it.

Sheriff Bond admits that the policies and procedures manual did not have a specific policy in regards to sexual harassment. Prior to Sheriff Bond becoming the sheriff he had not received any training as it relates to sexual harassment by Haywood County. Prior to the incident involved in this case, Sheriff Bond cannot remember any training he has received focusing on sexual harassment from Haywood County. Prior to this case, the Haywood County Sheriff's Department did not perform any training within the department on how personnel was to deal with females or persons of the opposite sex when responding to emergency calls. Sheriff Bond admits that Timothy Rogers was a Stanton deputy at the time the incident involved in this case. Any emergency calls that would have taken place in that area Deputy Rogers would have responded to.

Kim Williams, a former deputy of Haywood County, admitted that she received training while at the Donelson Academy, but they did not go over Haywood County's policies and procedures. Ms. Williams stated that policies and procedures would not be something that they went over every year as part of the in-service training. When asked specifically what policies and procedures they would go over, she stated that they would go over "pursuit policies, and we would go over domestic violence, and probably at that time it would just depend what we felt like was needed." Deputy Williams admitted that as part of the in-service training they did not receive training on how to deal with the opposite sex when responding to calls.

Sheriff Deputy Rogers worked for the Haywood County Sheriff's Department from September, 2000 until March, 2002. As Deputy Sheriff of Haywood County, Deputy Rogers was responsible for the Stanton, Tennessee area. Besides his 8-week training at the Donelson Academy, Deputy Rogers did not undergo any other training at Haywood County. Deputy Rogers testified that the time he was hired in Haywood County he was not given any materials to read concerning responding to emergency calls and the constitutional rights of citizens. Further, Deputy Rogers testified that he did not receive any training in sexual harassment from Haywood County Sheriff's Department. Deputy Rogers admitted that Haywood County officials did not offer him any training on the departmental policies and procedures. In fact, Deputy Rogers testified that he was never given Haywood County's policies and procedures. Deputy Rogers stated that no one ever discussed the policies and procedures of Haywood County Sheriff's Department with him. Deputy Rogers stated that his schedule in Stanton was always 6:00 p.m to 2:30 a.m. Deputy Rogers went to the house responding to an emergency call that he had received over his radio from dispatch. The only reason he went to the house was to respond to an emergency call. After responding to the call, Deputy Rogers called an ambulance and once the ambulance got there and stabilized the patient, Deputy Rogers led them back out. Deputy Rogers escorted the ambulance to the interstate and then turned back around. When Deputy Rogers returned to the house, he knocked on the door, he left his car running parked in the drive way with his lights on.

William Blackwell is a training officer and has been a training officer with Haywood County Sheriff's Department since 2002. Officer Blackwell admitted that they had no courses on sexual harassment in the in-service training with Haywood County. As part of the in-service that Haywood County has been offering there's been no focal point training on how officers should deal with the opposite sex when answering calls. No sexual harassment courses were the

focal point of any training's that Officer Blackwell had received prior to the incident in this case. Officer Blackwell states that he recalls receiving a manual when he was hired and given a copy of the policies and procedures, however they did not actually sit down and go over the policies and procedures with him to make sure he understood them. Instead, he remembers getting a copy of it and they said that this was the policies and procedures for him to take it and read it and if he had any questions to come back and ask them about it.

**B.** **CONTENTIONS OF THE DEFENDANT HAYWOOD COUNTY, TENNESSEE**

It is the contention of Defendant Haywood County that the proof will show that it was not deliberately indifferent to any rights of the Plaintiff. The evidence will undoubtedly show that Haywood County, Tennessee had enacted and continuously implemented policies and procedures forbidding the conduct which Defendant Rogers engaged in with the Plaintiff. The policies and procedures of Haywood County, Tennessee further addressed the proper behavior of an officer and what was expected by the county of each of its officers and certainly forbids the action of any officer that is criminal in nature. The evidence will further show that Haywood County, Tennessee complied with all training requirements under state law and ensured that its deputies, including Defendant Rogers, complied with these training requirements. Further, as is required under established case law, there must be a policy or procedure enacted causing a constitutional tort in order for Defendant to be held liable to Plaintiff. Defendant contends that there is no policy or procedure causing a constitutional tort, but to the contrary, the evidence will show that there are numerous policies and procedures enacted to prevent a constitutional tort to the Plaintiff.

### V. STIPULATIONS

1.    Defendant Timothy Leon Rogers was hired as a Haywood County Sheriff's Deputy in September, 2000.

8

2.   Before being hired as a deputy, Defendant Rogers filled out an application for the job and underwent all specific civil service testing as required and administered by the Haywood County Civil Service board.

3.   Defendant Rogers, like all deputies employed by the Haywood County Sheriff, was required to attend, and did complete, the mandatory eight weeks of training at Donelson Academy to become certified as a deputy pursuant to statute and the post commission requirements for deputies.

4.   All employees of the Haywood County Sheriff's Department are required to participate in forty (40) hours of annual in-service training, during which certain policies and procedures of Haywood County are reviewed.

5.   Defendant Rogers completed eight (8) weeks of training at Donelson Academy.

6.   Deputies are trained at Donelson Academy and during in-service training to act professionally.

7.   On February 28, 2002, Defendant Rogers responded to an emergency call at 109 Summit Lane in Stanton, Haywood County, Tennessee.

8.   Defendant Rogers pled guilty to criminal charges of official misconduct, concerning this incident with Plaintiff.

9.   Defendant Rogers sexually assaulted Ms. Currie. Defendant Rogers was wearing his badge and gun at the time that the sexual assault took place.

## VI.  CONTESTED ISSUES OF FACT

The contested issues included below are the issues which each respective parties believes are contested in this matter. By executing this document, neither party is stipulating or agreeing that the issues presented in this section by the opposing party are the issues which they believe are in fact present before this Honorable Court.

A.   Plaintiff submits that the following factual issues must be resolved in this case:

1.      Whether Haywood County is liable for violations of Ms. Currie's constitutional rights when one of its deputies acting in the course and scope of his training sexually assaulted Ms. Currie.

2.      Whether Haywood County is liable for the actions of one of its deputies when the deputy was deliberately indifferent to the rights of Ms. Currie when he sexually assaulted Ms. Currie in the course and scope of his employment with Haywood County.

3.      Whether Haywood County is liable when it had inadequate policies and procedures to the prevent the sexual assault by one of its officers to occur proximately causing the sexual assault that Ms. Currie suffered.

4.      Whether Haywood County is liable when it had inadequate policies and procedures to the prevent the sexual assault by one of its officers to occur proximately causing the sexual assault that Ms. Currie suffered.

5.      Whether Haywood County is liable when it showed deliberate indifference to the rights of Ms. Currie by failing to have sufficient policies and procedures in place preventing her from being sexually assaulted by a deputy acting in the course and scope of his employment.

6.      Whether Haywood County is liable for failure to train a deputy when it offered no training to its officers dealing with the treatment of members of the opposite sex.

B.     Defendant submits that the following factual issues must be resolved in this case:

1.      Whether Defendant was deliberately indifferent to the Plaintiff's rights by failing to properly train its officers.

2.      Whether Haywood County has enacted any policy or procedure which caused a constitutional tort to Plaintiff.

3.      If Defendant is found to have been deliberately indifferent, whether this deliberate indifference is the proximate cause of Plaintiff's injuries.

4.      Whether Plaintiff is entitled to any damages, including but not limited to compensatory for pain and suffering, loss of pleasures and enjoyments of life and the costs of this matter.

## VII.  CONTESTED ISSUES OF LAW

The contested issues included below are the issues which each respective parties believes are contested in this matter.  By executing this document, neither party is stipulating or agreeing that the issues presented in this section by the opposing party are the issues which they believe are in fact present before this Honorable Court.

A.     Contested issues of law submitted by the Plaintiff.

      1.     Whether Haywood County violated the constitutional rights of Ms. Currie when a deputy acting in the course and scope of his employment as a deputy sexually assaulted Ms. Currie, when it failed to properly train and supervise the deputy.

      2.     Whether Haywood County violated the constitutional rights of Ms. Currie when a deputy acting in the course and scope of his employment as a deputy sexually assaulted Ms. Currie when it failed to have adequate policies and procedures that would have prevented the assault.

      3.     Whether the failure of Haywood County to have adequate policies and procedures that would have prevented the sexual assault of Ms. Currie constitutes deliberate indifference to the rights of Ms. Currie.

      4.     Whether the failure of Haywood County to properly train Deputy Rogers to refrain from sexually assaulting Ms. Currie constitutes deliberate indifference to the rights of Ms. Currie.

      5.     Whether Ms. Currie suffered a constitutional tort when she was sexually assaulted by Deputy Rogers who was acting in the course and scope of his employment for Haywood County.

B.     Contested issues of law submitted by the Defendant.

      1.     Whether or not a policy or procedure existed that caused a Constitutional injury to Plaintiff.

      2.     Whether Defendant Haywood County, Tennessee was deliberately indifferent to any right of the Plaintiff and whether or not any deliberate indifference, if existent, of the Defendant was the proximate cause of Plaintiff's injuries.

## VIII. LEGAL CONTENTIONS OF THE PARTIES

The contentions included below are simply the contentions and/or positions of the respective parties only. By executing this document, neither party is stipulating to the contentions made herein by the opposing party and would state that any positions or contentions contained therein are not evidence.

### A.     Legal contentions submitted by the Plaintiff.

Whether defendant, Haywood County, is liable for violating the constitutional rights of Ms. Currie when it failed to properly train Deputy Rogers, who sexually assaulted Ms. Currie in the course and scope of his employment with Haywood County?

Whether defendant, Haywood County, is liable for violating the constitutional rights of Ms. Currie when it failed to have adequate policies and procedures to prevent Ms. Currie from being sexually assaulted by Deputy Rogers in the course and scope of his employment withHaywood County?

Whether the lack of training and the inadequate policies and procedures amounted to deliberate indifference to the rights of Ms. Currie to be free of sexual assault?

> Title 42 USC section 1983 provides, irrelevant part, that:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

The inadequacies of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact.  Canton v. Harris, 489 U.S. 378 (1988), citing Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).   When a municipality's  failure to train its employees  in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be  properly thought of as a city policy or custom that is actionable under section 1983.  Canton, at 388.  Municipal  liability under section 1983 attaches where - - and only where - - a deliberate choice to follow a course of action made from a known various alternatives by city policymakers.  Canton, at 388.  Only where a failure to train reflects a deliberate and conscious choice by municipality - - a policy as defined by a prior cases - - can a city be liable for such a failure under section 1983.  Id.  The deliberate indifference standard that

the court has adopted for section 1983's "failure to train" claims does not turn upon the degree of fault that a plaintiff must show to make out an underlying claim of a constitutional violation. <u>Canton,</u> at 389.  It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacies so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  <u>Canton</u>, at 390.  In that event, the failure to provide improper training may fairly be said to represent a policy for which the city is responsible and for which the city may be held liable if it actually causes injuries.  <u>Canton</u>, at 390.

Whether Ms. Currie has suffered a constitutional tort when she was sexually assaulted by Deputy Rogers, who was acting in the course and scope of his employment with Haywood County?A plaintiff can bring a claim under section 1983 when she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usages, of any state." <u>Doe v. Claiborne County</u> Tennessee 103 Fd. 3$^d$ 495 (6th Cir. 1996).  A municipal liability claim against the county must be examined by applying a two prong inquiry: 1) whether the plaintiff has asserted the deprivation of a constitutional right at all; and 2) whether the county is responsible for that violation.  <u>Doe</u>, at 505.  The right to personal security and to bodily integrity bears an impressive constitutional pedigree.  "No right is held more sacred or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." <u>Doe</u>, at 506, citing <u>Union Pac. Ry. Co. v. Botsford</u>, 141 U.S. 250 (1891).  The court has subsequently recognized the constitutional of standing of such a right in a variety of contexts.  In <u>Ingraham v. Wright</u> 430 U.S. 651, 673, 51 L.Ed. 2d 711, 97 S.Ct. 1401 (1977), the court declared that among the historic

13

liberties protected by the Due Process Clause is the right against "unjustified intrusions on personal security" at the hands of the state.  See also Youngberg v. Romeo, 457 US 307, 73 L.Ed. 2d 28, 102 S.Ct. 2452 (1982).  In Albright v. Oliver, 510 US 266, 127 L.Ed. 2d 114, 114 S.Ct.807, 812 (1994), the courts stated that "the protection of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation and the right to bodily integrity".  Doe, at 506.  "The magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it an unjustified intrusion that strips the very essence of personhood.  If the right to bodily integrity means anything, it certainly encompasses the right not to be sexually assaulted under color of law."  Doe, at 506, 507.  This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state acted is constitutionally permissible under the Due Process Clause.  In Doe, the Sixth Circuit held that Doe had a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity, that such right is fundamental, and that the defendant's sexual abuse of Doe violated that right."  Doe, at 507.

A sexual assault can be a constitutional violation under section 1983.  Haberthur v. City of Raymore Missouri, 119 Fd. 3$^{d}$ 720 (8th Cir. 1997).  This type of constitutional injury has been described as a violation of the substantive due process right to bodily integrity or privacy, and the courts of appeal have recognized that the right may be violated by sexual fondling and touching or other egregious sexual contact.  Haberthur at 723, citing Lillard v. Shelby County Board of Education ,76 Fd. 3$^{d}$ 716, 726 (6th Cir. 1996).  An officials' conduct is taken under color of state law, if a real nexus exists between the activity out of which the violation occurs and the officials' duties and obligations as a state actor.  Wilson v. Webb , 2000 U.S. App. Lexis 23585 (6th Cir. 2000), citing Doe v. Taylor Indep. Sch. Dist., 15 Fd. 3$^{d}$ 443, 452 (5th Cir. 2000).

A claim may be maintained based on a single violation of federal rights when the violations is accompanied by certain inactions on the part of a municipality.   <u>Weaver v. Tipton Co.</u> <u>Tennessee</u>, 41 Fd. Supp.2d 779, W.D. Tenn. (1999), citing <u>Board of County. Comm'r v. Brown</u>, 520 U.S. 397 ( " the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." In <u>Weaver</u>, the Sixth Circuit Court of Appeals stated that "the Supreme Court left open the possibility that a plaintiff might succeed in carrying a failure to train claim without showing a pattern of constitutional violations...[because] in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handling recurring situations. <u>Weaver</u> at 790. In continuing to cite <u>Brown</u>, the Sixth Circuit stated:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the polic makers' choice--namely, a violation of a specific constitutional or statutorily right.  The high degree of predictability may also support an inference of causation--that the municipalities indifference led directly to the very consequence that was so predictable.  <u>Id</u>.

### B.   <u>Legal contentions submitted by the Defendant.</u>

1.      Whether or not a policy or procedure existed which caused a Constitutional injury to Plaintiff.

In order to hold governmental entity liable under § 1983, the entity must engage some official policy or custom that causes a Constitutional tort. *Monell v. Dept. of Social Services of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). See *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)("..[I]n order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the

municipality"). Thus, in order to recover from Defendant Haywood County, Tennessee, Plaintiff must allege that her injuries were caused directly by the execution of official policy or custom as required by *Monell*:

> We conclude, therefore, that a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, at 2037-38. *See also, Board of County Commissioners v. Brown*, 117 S.Ct. 1382 (1997).

Defendant Haywood County, Tennessee states that it does not have a policy or procedure enacted which causes a Constitutional tort, nor specifically has a policy or procedure enacted which caused any injury to this Plaintiff in particular. To the contrary, it is clear that Haywood County, Tennessee has numerous policies and procedures enacted to prevent a constitutional tort to the Plaintiff and to govern and direct the conduct of its officers. Plaintiff cannot allege that a policy or procedure has been enacted which causes a Constitutional tort and therefore cannot maintain a cause of action against Defendant Haywood County, Tennessee.

Finally, the policies and procedures of Haywood County, Tennessee which are enacted address the proper behavior of an officer and what is expected by the county of each of its officers and certainly forbids the action of any officer that is criminal in nature. Haywood County, Tennessee, ay all times, complied with all training requirements under state law and ensured that its deputies, including Defendant Rogers, complied with these training requirements and that they received the proper and necessary training.

## IX. EXHIBITS

The following are the Parties' list of Trial Exhibits.

A.     Plaintiff's Exhibits

1.     Policies and procedures of Haywood County Sheriff's Department

2. Employment records of Timothy Leon Rogers

3. Separation notice for Timothy Leon Rogers

4. Documents related to testimony of Phillip Davidson

B. Defendant's Exhibits

Possible exhibits have already been provided to opposing counsel pursuant to the Scheduling Order and the Rule 26(a)(3) Disclosures, pursuant to the Federal Rules of Civil Procedure.

1. Policies and Procedures of the Sheriff of Haywood County, Tennessee and Haywood County Tennessee.

2. Any and all employment records of the Sheriff of Haywood County, Tennessee for Timothy Leon Rogers. This shall include the entire personnel and employment file of Timothy Leon Rogers, which has previously been provided to the plaintiff throughout the course of discovery.

3. Separation Notice for Timothy Leon Rogers.

4. Any and all records regarding the Criminal proceedings as to Timothy Leon Rogers, including but not limited to the charges against Rogers, and pleas of Rogers and the judgment entered in his criminal matters.

5. Letter from Pathways Behavioral Health Services in re: Tim Rogers, dated January 14, 2002.

6. Application for Employment with the Sheriff of Haywood County for Timothy Leon Rogers.

7. Any and all training, in-service, and/or academy certifications completed or attended by Timothy Leon Rogers.

8. Any and all documents attached to the Rule 26(a)(2)(B) Expert Disclosure by Defendant Haywood County, Tennessee as competed by Dennis Mays and fully disclosed to Plaintiff.

## X.  WITNESSES FOR THE PARTIES

A. Witnesses for the Plaintiff.
Plaintiff will call:

17

1.  Tawanna Currie

2.  Willie Mae Powell

3.  Melvin Bond

4.  Raymond Russell

5.  Phillip Davidson

Plaintiff may call:

6.  Amber Lewis

7.  Eric Clark

8.  Kim Williams

9.  William Blackwell

10.  Timothy Rogers

B.  Witnesses for the Defendant Haywood County, Tennessee.

Possible witnesses have already been provided to opposing counsel, and filed with this Honorable Court, pursuant to the Scheduling Order and the Rule 26(a)(3) Disclosures pursuant to the Federal Rules of Civil Procedure.

## XI.    DEPOSITION TESTIMONY

The parties assert that they will present direct deposition testimony pursuant to the Federal Rules of Civil Procedure and Evidence.

## XII.  ESTIMATED LENGTH OF TRIAL

Defendant Haywood County, Tennessee believes that this matter can be tried in two (2) to three (3) days.

## XIII.   DAMAGES

Plaintiff states that she is entitled to compensatory damages commensurate with the proof of the outrageous and reckless conduct by Deputy Timothy Leon Rogers and Haywood County, Tennessee.  Additionally, plaintiff requests attorney's fees and expenses.

Defendant Haywood County, Tennessee contends that Plaintiff is not entitled to any damages and requests that Defendant be awarded the previous request for attorney's fees. Defendant Haywood County, Tennessee also asserts that they are entitled to request attorney's fees and costs pursuant to 42 U.S.C. §1988.

## XIV.   ATTORNEYS

Christopher L. Taylor of Hill-Boren in Memphis, Tennessee represents Plaintiff.

James I. Pentecost and William B. Mauldin of Pentecost, Glenn & Rudd, PLLC in Jackson, Tennessee represent Defendant Haywood County, Tennessee.

Defendant Timothy Rogers is proceeding *pro se* in this matter.

## XV.  PROSPECTS OF SETTLEMENT

Defendant Haywood County, Tennessee and Plaintiff Tawanna Currie would state for this Honorable Court that both parties have undertaken attempts to settle this matter but have been unable to reach a mutually agreeable settlement.  Defendant Haywood County denies that it has violated any constitutional or any other legal right of the Plaintiff.  Plaintiff believes her claim to be meritorious.  Accordingly, this matter should proceed to trial.

## XVI.   SPECIAL EQUIPMENT NEEDED

The parties anticipate needed use of the Easel and Elmo machine during this trial.

Respectfully submitted,

PENTECOST, GLENN & RUDD, PLLC

By: _____

James I. Pentecost  #011640
William B. Mauldin #022912
Attorneys for Defendant
        Haywood County, Tennessee
106 Stonebridge Blvd.
Jackson, TN  38305
(731) 668-5995


HILL-BOREN, P.C.

By: _____

Christopher L. Taylor #18246
191 Jefferson Avenue
Memphis, TN 38103


## CERTIFICATE OF SERVICE

      This is to certify that I have served a copy of this pleading or paper personally or by mail upon each attorney, firm of attorneys, or *pro se* party appearing of record for each adverse party on or before the filing date thereof.

This the 29th day of June, 2005.

PENTECOST, GLENN, & RUDD, PLLC

By: _____

James I. Pentecost (011640)
William B. Mauldin (022912)


_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

30 June 2005
_____
DATE

20

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 84 in case 1:03-CV-01052 was distributed by fax, mail, or direct printing on July 1, 2005 to the parties listed.

---

Christopher L. Taylor
HILL BOREN
191 Jefferson Ave.
Memphis, TN 38103

Brandon O. Gibson
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

James I. Pentecost
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Honorable James Todd
US DISTRICT COURT