IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TAWANNA CURRIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 03-1052-T/An |
| ) | |
| HAYWOOD COUNTY, TENNESSEE; ) | |
| HAYWOOD COUNTY SHERIFF'S ) | |
| DEPARTMENT; and TIMOTHY LEON ) | |
| ROGERS, ) | |
| ) | |
| Defendants. ) | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The plaintiff, Tawanna Currie, filed this action pursuant to 42 U.S.C. § 1983 against Haywood County, Tennessee, the Haywood County Sheriff's Department (the "Department") and Timothy Leon Rogers in both his individual and official capacities, alleging that her constitutional rights were violated when she was sexually assaulted[1] by Rogers while he was on duty as a deputy sheriff for Haywood County. The parties agree that the Court has subject matter jurisdiction and that venue is proper in this district. On September 2, 2003, the Court issued an order dismissing the Department as a separate defendant and dismissing plaintiff's claim for punitive damages against Haywood County. The Court also declined to accept

---

[1] In this opinion,"assault" and"sexual assault" are descriptive terms only. Whether Rogers's conduct satisfied the elements of the crimes of assault or sexual assault under Tennessee law is not before the Court, and the Court makes no such findings.

supplemental jurisdiction over any state law claims. On March 10, 2005, the Court issued an order granting summary judgment to the defendants on the issue of whether Haywood County was deliberately indifferent in retaining Rogers as an employee; summary judgment was denied in all other respects.

The case was tried by the Court, sitting without a jury, on July 6-7, 2005. The plaintiff and defendant Haywood County were represented by counsel. Defendant Rogers appeared *pro se*, representing himself. At the close of all the evidence, the Court took the matter under advisement. Based upon the evidence presented, the statements of counsel and the entire record, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## § 1983 Claim Against Defendant Rogers

The plaintiff testified that, at the time the incident with Rogers occurred, she resided with her mother, Willie Mae Powell, at 109 Summit Lane in Stanton, Tennessee. Late on the night of February 28, 2002, plaintiff was awakened by her mother. Plaintiff's brother had overdosed, and her mother asked plaintiff to call 911 on her cell phone because there was no other telephone in the house. Rogers was a deputy sheriff with the Department, and was responsible for Stanton during that particular shift. He was the first to respond to the 911 call at plaintiff's home. Rogers checked on plaintiff's brother, who was unresponsive, then talked with plaintiff and her mother while they were waiting for an ambulance. Rogers did not, at that time, say anything or take any action that was inappropriate or unprofessional.

As plaintiff's brother was being taken from the house by emergency medical

personnel, Rogers offered to return later and let plaintiff know what had happened, and she agreed. Rogers left, and plaintiff's mother left with the ambulance, so that plaintiff was alone in the house. At some time thereafter, Rogers returned to the residence. Plaintiff let him in and he followed her into the kitchen, telling her that her brother had been taken to a hospital in Brownsville, Tennessee. While standing beside plaintiff, Rogers tried to put his hand between her legs, inside the boxer shorts she was wearing, and tried to touch her breast. Plaintiff slapped his hand away, telling him to stop. Plaintiff testified that she felt threatened and considered hitting him with a skillet she was holding, but was afraid to because Rogers was armed and could have shot her while claiming she attacked him. Plaintiff attempted to turn away from him, but he pinned her between his body and the washing machine and tried to kiss her. Plaintiff resisted, telling him to stop, and to leave.

Plaintiff was able to move away from Rogers, but he followed and came up behind her, rubbing his genital area across her back and buttocks. Plaintiff told him to leave her alone and tried to distract him by asking questions. However, Rogers continued his advances, telling her that he would leave if she kissed him. Plaintiff refused, but said she would hug him if he would leave, and he agreed. Plaintiff testified that as she leaned in to give him a quick hug, Rogers reached around her and, grabbing her buttocks, lifted her off her feet and pulled her against his body. He kept trying to kiss her, but she continued to resist. Plaintiff began to cry and kept asking him to leave. Rogers dropped plaintiff back to the floor, asked her to come see him sometime, and left. Plaintiff testified that she locked the door behind him, then went into her bedroom and locked herself in.

Plaintiff reported what had happened the next day, in person, to the Haywood County Sheriff at that time, Raymond E. Russell. Russell had plaintiff give a statement to Kim Williams and also referred the matter to the Tennessee Bureau of Investigation. As a consequence of the incident, Rogers was terminated from the Department and charged with official misconduct, to which he entered a guilty plea.

In order to establish a claim under 42 U.S.C. § 1983, the plaintiff must show that she was deprived of a right "secured by the Constitution and the laws" of the United States by a person acting "under color of" state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56 (1978). The Sixth Circuit held, in Doe v. Claiborne County, Tenn., 103 F.3d 495 (6th Cir. 1996), that the right to be free from sexual assault at the hands of a state actor is "clearly embraced" within the fundamental Fourteenth Amendment substantive due process right to personal security and bodily integrity. Id. at 506-07. See also Ford v. County of Oakland, 35 Fed. Appx. 393, 396 (6th Cir. 2002).

Plaintiff's testimony regarding the incident with Rogers was uncontradicted by any other evidence in the record, and that testimony is entirely credible. Rogers was on duty at the time, he was in uniform, and he was armed. He had responded to an emergency 911 call at plaintiff's residence, and the assault occurred after Rogers returned to the residence and gained entry on the pretense of following up on that emergency situation, in his capacity as a deputy sheriff. Therefore, the Court finds that Rogers was acting under color of state law when he sexually assaulted the plaintiff. Accordingly, the Court concludes that Rogers violated plaintiff's Fourteenth Amendment substantive due process right to personal security

and bodily integrity. Judgment will be entered in favor of the plaintiff against defendant Rogers in his individual capacity.

§ 1983 Claims Against Haywood County[2]

Defendant Rogers was hired as a deputy by the Department in September 2000. Kim Williams, who was the designated training officer for the Department at that time, testified that all new hires were given a copy of a document titled "Haywood County Sheriff's Department Policies and Regulations." (Ex. 1.) She testified that she gave a copy of that document to Rogers when he was hired, and told him to read and know it. The Court finds Williams's testimony more credible than the assertion by Rogers in his deposition, which was read into evidence, that he did not receive a copy of that document. Former sheriff Russell testified that new deputies were required to complete a probationary period during which they would ride with a senior officer for at least eighty hours.

Rogers completed an eight-week course of instruction at the Tennessee Law Enforcement Training Academy ("TLETA") at Donelson, Tennessee in the spring of 2001, and was certified as having met the minimum training requirements for a law enforcement officer. According to plaintiff's expert, Phillip Davidson, the training at the TLETA specifically includes instruction on how to deal with members of the opposite sex in various situations. In another portion of his deposition which was read into evidence, Rogers testified that he did receive training at the TLETA regarding proper interaction with females.

---

[2] Plaintiff's official capacity claims against defendant Rogers are merely another way of pleading an action against Haywood County. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell, 436 U.S. at 690 n.55; Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003).

He further testified that he understood from that training that he was not to touch females inappropriately or make sexual advances toward them.

Although Haywood County officers generally comply with the state law requirement that they have forty hours of in-service training every year, an officer is not required to complete forty additional hours in the same year he attends the TLETA. Therefore, Rogers did not attend any in-service training in 2001. Lieutenant William Blackwell, who was also a certified training officer at the time Rogers was hired,[3] testified that he did not fully recall whether Rogers completed any in-service training between his hiring in September 2000 and attending the TLETA the next spring. However, Rogers testified in his deposition that he did not, and the Court credits that testimony.

The Department's written policies and regulations do not contain provisions specifically addressing the manner in which its officers are to handle situations requiring them to interact with female members of the public. Those policies and regulations also do not contain provisions specifically stating that it is against Department policy to sexually harass or sexually assault members of the public. Plaintiff's expert witness, Phillip Davidson, testified that, in his opinion, the Department's written policies were inadequate in these respects and that the Department did not adequately train its officers regarding what they should and should not do when interacting with female members of the public. In addition, Davidson testified that, in his opinion, the Department did not have adequate

---

[3] Blackwell stated that although the Department could have more than one certified training officer at any particular time, the TLETA would recognize only one person as having responsibility for training. Kim Williams had that responsibility at the time Rogers was hired; Blackwell took over at a later date.

training on the proper use of force. The latter opinion was based on the fact that he had seen no actual written documentation that the Department provided training on the use of force beyond what its officers were taught at the TLETA.

Blackwell testified that the only subjects that the TLETA requires law enforcement departments to cover during their in-service classes is child sex abuse and firearms training, and that Haywood County's in-service classes covered much more than those two required subjects. Although there was no class designed solely to instruct deputies how to interact with females in various situations, Blackwell stated that the Department's in-service classes included training and discussion regarding the special care deputies must take in dealing with females. For example, he testified that during instruction on handling domestic violence situations and during instruction on the use of force, deputies were taught never to touch a female unless it was absolutely necessary for the deputy's safety or the safety of other individuals. Blackwell also testified that the Department's in-service training included discussion of what could constitute sexual harassment and discussion of the need to respect the constitutional rights of all citizens.

Former sheriff Russell testified that there was day-to-day discussion among himself and his deputies concerning the Department's various policies and regulations. He stated that Rogers, probably more so than his other deputies, often would come by to ask about a particular situation that had occurred and discuss the procedures applicable to that situation.

The Department's policies and regulations set out broad general standards of conduct for its officers, including the Law Enforcement Code of Ethics, which provides in part:

7

> As a law enforcement officer, my fundamental duty is . . . to protect . . . the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights to all persons to liberty, equality and justice.
>
> . . . .
>
> . . . I will be exemplary in obeying the laws of the land and the regulations of my department.

(Ex. 1, Art. I, § 1.B.) The general standards of conduct also provide:

> A member must scrupulously avoid any conduct which might compromise the integrity of themselves, their fellow members or the Department.
>
> . . . [M]embers must at all times conduct themselves in a manner which does not bring discredit to themselves, the Department or the County.
>
> . . . [D]iscourtesy or disrespect shown toward any citizen is indefensible.
>
> . . . [A]ll persons have a right to dignified treatment under the law, and the protection of this right is a duty which is binding on the Department and each of its members . . . .

Id. These provisions further provide that it is the duty of all Haywood County deputies to "[o]bey all laws," to "[k]now and conform to the Department's policies, rules, regulations, orders, procedures and directives," and to "[m]aintain a courteous and respectful attitude toward all persons." (Ex. 1, Art. IV, §§ C.2-C.3, C.6.)

The Department's policies and regulations contain specific disciplinary rules prohibiting any conduct that would bring "degrade or bring disrespect" upon the officer or the Department, (DR 104); requiring officers to adhere to all laws, (DR 105); and requiring them to be courteous, civil and respectful in dealing with all persons, (DR 107). The rule on the use of force allows officers to use only that force which is "reasonable and necessary to

protect others or themselves from bodily harm" and specifically prohibits "unnecessary force or violence . . . in dealing with any person." (DR 301(a)-(b).) Officers are prohibited from using or directing "unjustifiable violence, abuse, force or threats against, or otherwise intimidat[ing] any person." (DR 302.) The disciplinary rules also require that an officer "not abuse his authority or official position in order to harass, embarrass, degrade, oppress, or torment any person." (DR 303.)

The defendants' expert, Dennis Mays, testified that, in his opinion, the Department's policies and regulations were clear, unambiguous and fully adequate to place its deputies on notice of what constitutes appropriate conduct toward all citizens, including females, and of what constitutes prohibited conduct. He stated that all of the Department's disciplinary rules, and specifically those on intimidation and harassment, DR 302 and DR 303, were gender-neutral, and that special policies and rules regarding how to interact with females were unnecessary. Mays also testified that, in his opinion, the training the Department provided for its deputies, and for Rogers in particular, was adequate.

One of the primary contentions of the plaintiff's expert, Davidson, was that the Department's policies, and its training and supervision of Rogers, were inadequate because it did not have in place a preventative program designed to identify those law enforcement officers likely to develop unacceptable and dangerous behaviors such as sexual aggression, excessive force, thievery, or suicidal tendencies. Davidson testified that such programs are found in many law enforcement agencies. Officers and supervisors are trained to identify certain "maladaptive" traits in their colleagues and to report any observation of those traits

9

to a psychological services unit, which then follows up with an evaluation of the officer involved. Davidson testified that, in his opinion, law enforcement officers do not engage in extremely inappropriate behavior, such as Rogers displayed, without having previously exhibited these recognizable traits, or symptoms.

In response to questioning by the Court, Davidson testified that it was not possible to train an officer not to commit sexual assault. He stated that, instead, law enforcement agencies should put in place preventative programs, such as he described, to identify those individuals with the tendency to engage in such behavior. In Davidson's opinion, the absence of such a preventative program, coupled with the mere fact that Rogers assaulted the plaintiff, demonstrates that the Department's policies, training and supervision were constitutionally inadequate.

A governmental entity such as a city or county cannot be held vicariously liable under § 1983 for the acts of its agents or employees. There must be a showing that the constitutional violation is the result of a governmental policy or custom. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 & 694 (1978). Thus, the governmental entity "is only liable when it can be fairly said that the [entity] itself is the wrongdoer." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992). This requires a showing that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

The Supreme Court has specifically held that "the inadequacy of police training may serve as the basis for § 1983 liability," but "only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "[P]laintiff must prove that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (quoting City of Canton, 489 U.S. at 390-91). "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998).

> In City of Canton, the Supreme Court explained:
>
> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

489 U.S. at 390-91 (citations omitted). Nevertheless, in Brown, the Supreme Court left open "the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." 520

U.S. at 409.

Regarding the adequacy of the Department's policies, both written and unwritten, addressing the proper use of force and the proper way to interact with members of the public, both male and female, there was significant evidence offered at trial, including the testimony of Blackwell and Mays, the defendants' expert, that those policies were not constitutionally deficient. The Court finds that evidence persuasive. Therefore, notwithstanding the opinions of Davidson, the plaintiff's expert, the Court finds that plaintiff has failed to prove, by a preponderance of the evidence, that the Department's policies in those areas were inadequate to the tasks the Department's officers were required to perform.

In addition, Rogers clearly stated that, due to his law enforcement training, he knew it was wrong to touch inappropriately, or to make sexual advances toward, females with whom he interacted in the course of his duties. Nevertheless, despite that training, Rogers sexually assaulted the plaintiff. Thus, the Court finds that the plaintiff has failed to prove the required element of causation with regard to her claim that the Department failed to train Rogers. She has failed to show that the constitutional violation was "closely related to" or "actually caused" by such a failure to train. City of Canton, 489 U.S. at 390-91.

Davidson, also testified that the Department's training and supervision were deliberately indifferent because there was no program in place to identify those officers with tendencies toward aberrant behavior. However, the Court finds unpersuasive the assertion that the mere occurrence of the sexual assault, by itself, is evidence that Rogers must have demonstrated such traits previously and that a preventative program would have caught and

identified him as a potential problem in time to prevent the assault. A finding of causation based on that assertion would be unacceptably tenuous, as plaintiff has offered no evidence whatsoever that Rogers previously exhibited any of the "warning" traits noted by Davidson. Therefore, the Court finds that plaintiff has failed to prove that the constitutional violation in this case was caused by the lack of such a preventative program.[4]

The Court concludes that the plaintiff has failed evidence sufficient to prove, by a preponderance of the evidence, that Haywood County was deliberately indifferent to the her constitutional rights through its failure to adequately train or supervise its deputy sheriffs. Therefore, she has failed to establish that the constitutional violation in this case was caused by a policy or custom of Haywood County. Judgment will be entered in favor of Haywood County.

### Damages

In § 1983 cases, the amount of damages is ordinarily determined according to common law tort principles. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986). Compensatory damages may include out-of-pocket losses and other monetary harms, as well as such injuries as personal humiliation, embarrassment, and mental anguish and suffering. Id. at 307. However, compensable damages must be proven and cannot be presumed. Carey v. Piphus, 435 U.S. 247, 263-64 (1978). Specifically, the plaintiff has to

---

[4] At trial, Rogers asked Sheriff Russell if he recalled Rogers being off work in October 2001 due to a psychiatric disorder. Russell testified that he did not recall that incident, and no further evidence of a psychiatric disorder was offered by either Rogers or the plaintiff. In any event, the Court previously granted summary judgment to the defendants on the claim that they were deliberately indifferent in retaining Rogers as an employee.

offer "evidence of the nature and extent of emotional harm caused by the alleged violation." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir.1998). The plaintiff must "convince the trier of fact that [she] actually suffered distress because of the [constitutional violation] itself." Carey, 435 U.S. at 263.

Medical or other expert evidence is not required to prove emotional distress. Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir.1996). "A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." Id. at 1215-16 (citing cases).

Plaintiff testified that, after the incident with Rogers she began having migraine headaches, and underwent an MRI. Plaintiff also stated that she sought professional help after the incident. However, no actual evidence of medical expenses was offered. In addition, plaintiff offered no evidence that she lost any wages due to the incident. Therefore, there is no evidence that plaintiff suffered any pecuniary losses.

As for nonpecuniary damages, plaintiff testified that, as a result of the assault by Rogers, she was constantly scared and nervous. She stated that she no longer trusted law enforcement officers, feeling that they would not protect her. Plaintiff also stated that she had trouble sleeping because every time she heard the neighbor's dog barking or someone walking through the house, she felt compelled to get up and see who it was and make sure that no suspicious cars were parked outside. Plaintiff further testified that she was afraid to go into Brownsville, the seat of Haywood County, because she feared running into Rogers or his family. Rogers's stepdaughter approached plaintiff at T.J. Mulligan's, a restaurant in

Jackson, Tennessee, but plaintiff walked away from her and left. Plaintiff's mother testified that plaintiff was afraid to stay at the Summit Lane residence by herself, and plaintiff herself testified that she would work extra shifts just so she would not have to go home.

Although the evidence on damages is not extensive, the testimony of plaintiff and her mother shows that plaintiff suffered some mental pain and anguish, and that she is entitled to more than nominal damages. The Court finds that plaintiff should be awarded $20,000 in nonpecuniary compensatory damages against defendant Rogers in his individual capacity.

The plaintiff has also requested an award of punitive damages. In federal civil rights actions, the standard for punitive damages is based on the defendant's state of mind. Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002). In § 1983 actions specifically, the Supreme Court has held that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger" a consideration of whether punitive damages are appropriate. Smith v. Wade, 461 U.S. 30, 51 (1983).

In this case, the evidence demonstrates that Rogers acted with reckless or callous disregard for the plaintiff's constitutional rights. Therefore, the Court finds that an award of punitive damages is appropriate, and that plaintiff should be awarded $5,000 in punitive damages against defendant Rogers in his individual capacity.

## Conclusion

In accordance with the foregoing discussion, judgment in the amount of $20,000 compensatory damages and $5,000 punitive damages will be entered in favor of the plaintiff,

Tawanna Currie, against defendant Timothy Leon Rogers in his individual capacity. Judgment will be entered in favor of defendant Haywood County, Tennessee.

The plaintiff may file a motion for attorney fees within the time limit specified in Federal Rule of Civil Procedure 54(d)(2). If the motion for attorney fees is timely filed in accordance with that rule, the time for appeal will be extended in accordance with Federal Rule of Civil Procedure 58(c)(2) and Federal Rule of Appellate Procedure 4(a)(4)(A)(iii).

IT IS SO ORDERED.

                                                s/ **James D. Todd**
                                                JAMES D. TODD
                                                UNITED STATES DISTRICT JUDGE